STARK.
March, 1818.

Barrett
v.
Jarvis.

---

## BARRETT vs. JARVIS.

It is not actionable to say of one he is akin to negroes.

ACTION on the case for words.

The declaration was as follows:

"Thomas Barrett complains of John Jarvis in a plea of the case, &c., for that whereas, he, the said Thomas, is a good, true, honest, white citizen of this State, and until the speaking and publishing of the false, scandalous, and defamatory words hereinafter mentioned, was as such received, respected and associated with, by all his neighbors and acquaintances, and was never accused, or suspected of being a mulatto or in any way akin or related to negroes; nevertheless, the said John, well knowing the premises, but greatly envying the happy state and condition of said Thomas, and contriving and maliciously intending the said Thomas, in this behalf, to degrade and injure, and to cause it to be believed throughout the neighborhood, that the said Thomas was a mulatto, and a relation of negroes, and thereby to cause the said Thomas to be excluded from the society of white people, and denied the right of suffrage, on the 1st day of January, 1817, at Belmont county aforesaid, in a certain conversation which he, the said John, then and there had with one Z. M. of and concerning the said Thomas, and of and concerning Polly Barrett, the daughter of the said Thomas, the said John then and there, falsely and maliciously said, rehearsed, proclaimed, and loudly published, these following, false, scandalous, and defamatory words, of and concerning the said Thomas, to wit: I (meaning himself, the said John) understand that you (meaning the said Z) are going to marry one of Barrett's (meaning the said plaintiff's) daughters; I (again meaning himself, the said John) am sorry you (again meaning the said Z) should, for they, (meaning the said plaintiff and his daughter) are akin to negroes.

And whereas, also, the said John, afterwards, to wit, on the 10th day of January, in the year aforesaid, at the county aforesaid, in a certain conversation which he, the said John, then had with certain other good citizens of this State, of and concerning the said Thomas, and of and concerning the report circulated by the said John, that said Thomas was akin to negroes, of his further malice, these other false, scandalous, and defamatory words, falsely and maliciously did utter and publish, of and concerning the said Thomas, to wit : I (meaning himself, the said John) did say that they (meaning the said Barrett and his family) were akin·to negroes, and I (again meaning himself) always shall believe it until it is cleared up ; by reason of the speaking and publishing of which false, malicious, and defamatory words, the said Thomas has been greatly injured in his good name, &c."

The defendant pleaded not guilty.  Verdict for the plaintiff.

Motion in arrest of judgment—" for that the words in the declaration are not actionable."

HAMMOND, for the plaintiff.  WRIGHT, for the defendant.

PRESIDENT.—We are called upon to decide whether the words laid in this declaration are actionable—the words amount to charging the plaintiff with being of kin to negroes—is such a charge slanderous in law ?

This action lies against any person, "for falsely and maliciously speaking of another, words which directly charge him with any crime, for the commission of which, the offender is punishable by law, or with having any contagious disorder, the imputation of which may exclude him from society," 2d Selwyns N. P. 1157—it does not lie "for an imputation of the mere defect or want of moral virtue ; " 3d Wils. 177—5 Johns. 191.

If the action does not lie for imputing a want of moral virtue, can it lie for imputing a consanguinity with any particular race of men ? for saying of another, that he has a drop of African blood in his veins, that he is of kin in some degree, remote or near, to the negroes, to that race of men who have been for ages the victims of a·bloody and unrelenting avarice, and who are bowed down to the ground, and trodden under foot by oppression so wide and so enormous, that no man can for a moment contemplate their situation without the deepest commiseration and horror, commiseration for their sufferings, and horror at the immense mass of wickedness and crime which holds them in subjection.

STARK.
March, 1818.

Barrett
v.
Jarvis.

STARK.
March, 1818.

Barrett
v.
Jarvis.

And why should the action lie for imputing a kindred with the negro race? is it because they are slaves? I presume not; the Russian peasant, the Polish serf, and recently the feudal villain were alike slaves—who is there of European extraction, who can be sure that no one of his ancestors was bought and sold like the cattle of a feudal Lord? and surely it could not be imagined to be slanderous to charge one with being of kin to the Russian boor or Sclavonian serf.

Is it because the negro is black? but on this ground, the action should as well lie for imputing kindred with the native of Malabar, and many other parts of India; with the Brazilian, the Californian, the New Hollander, the Laplander, the Greenlander, who are all of a swarthy hue and many as black as the native of Congo—and if being of kin to negroes is a slanderous imputation, it must be so, to say of a person that he is of kin to a Quinteron, a name used in the West Indies for a person who is fifteen sixteenths white and one sixteenth black, for this would be to charge him with being of kin to the negroes, and yet the Quinteron is free by law, even in the Spanish colonies, and cannot be distinguished in external appearance from the fairest European or American.

Is it because blacks and mulattoes, are subject to legal disabilities? that a person must be a free white male to be an elector? and the imputation of being of kin to negroes might tend to deprive a man of the elective franchise? it cannot be; because it is no slander to say of a man that he is not a qualified elector, as it would be to say of a woman that she is not a free white male.

I fully agree with the court in the case of Row vs. Clargis, Sir Thomas Ray. Rep. 482, "that the law doth alter with the time," when the sense of words alter, as in the cases then put, and in all cases coming within the like reason; but before I can decide that words of this kind are slanderous, I must be satisfied that they are of very different import from what they now appear to be; besides, if the law of slander is to be thus extended, I do not see where we are to stop; we may have actions of slander for calling persons Irish, or French, or Yankees, if persons who are so called, feel their pride and self-importance wounded by the imputation.

Whether God hath made of one blood all men who dwell upon the face of the earth, and the appearance of distinct races is produced by climate and other causes, or whether distinct races of men were created, the history of mankind, experience and observation, teach us that the

perpetual migration of tribes, of families and of individu-
als, produce a mixture and blending of all the various races
of men—and I know of no principle of ethics or law,
which would forbid a descendant of the fair haired and
ruddy Tuetone from marrying the swarthy native of Africa; good
taste and refinement, but neither law or morals forbid such connections.

I cannot, in any point of view in which I have been able to examine
the question, see how this action can be supported. We live under a
government, which recognizes the natural equality of man, which by
a fundamental law, hath preserved us from the dangers and the curse
of slavery, and, as a magistrate in a free commonwealth, I will never
sanction any doctrine which directly or indirectly contravenes that
principle on which our Government rests, that all men are created
free and equal.—Judgment arrested.